```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

SCHWEGMANN FAMILY TRUST                    CIVIL ACTION
NO. 2

versus                                     No.  06-2447
                                           C/W 06-2530

KFC NATIONAL MANAGEMENT                    SECTION: I/5
COMPANY, ET AL.
```

<u>ORDER AND REASONS</u>

Before the Court are three motions for summary judgment.  For the reasons set forth below, Schwegmann Family Trust No. 2's ("Schwegmann") motion for summary judgment against KFC U.S. Properties, Inc. and KFC Corporation (collectively "KFC"), and West Quality Food Service, Inc. ("West") is **GRANTED,** KFC's motion for summary judgment against Schwegmann is **DENIED**, and KFC's motion for summary judgment against West is **GRANTED**.

*Background*

This case arises out of two land lease agreements between Schwegmann and KFC, on which KFC and assignee West have refused to

make payments in the wake of the destruction caused by Hurricane Katrina.  On April 19, 2006, West filed a lawsuit against Schwegmann in state court seeking to annul the two land lease agreements.[1]  On May 9, 2006, Schwegmann filed its lawsuit in this Court for enforcement of the lease agreements against KFC.[2]  The West lawsuit was removed to this Court and consolidated with Schwegmann's lawsuit.[3]

Schwegmann filed its motion for summary judgment against KFC and West, asserting that, despite the damage caused by Hurricane Katrina, KFC and West remain liable under the lease agreements. KFC filed for summary judgment on its counterclaim against Schwegmann asserting that, in the wake of the destruction caused by Hurricane Katrina, it is entitled to dissolution of the leases pursuant to Louisiana Civil Code Articles 2715, 2696, and 2682.[4]

### *Relevant Facts*

On or about November 27, 1989, and November 30, 1989, Schwegmann Giant Super Markets,[5] as landlord, entered into two land

---

[1] Case No. 06-2530, Rec. Doc. No. 1-2.

[2] Rec. Doc. No. 1.

[3] Rec. Doc. No. 6.

[4] Rec. Doc. No. 33-2.

[5] Schwegmann Giant Super Markets transferred the properties and leases to the Schwegmann Trust via an act of credit sale dated May 19, 1994. Rec. Doc. No. 19-3, p. 2 ¶9.

lease agreements with KFC National Management Company,[6] as tenant, for a 20-year lease on properties in New Orleans and Chalmette.[7] KFC Corporation signed the agreements as guarantor for KFC National Management Company.

On May 13, 1999, KFC National Management Company assigned the two land leases to West.[8]  Under the lease agreements, such assignment was only permissible with the prior written consent of Schwegmann.[9]  Schwegmann consented to the assignment with the express provision that KFC remain liable for all obligations under the leases.[10]

The new agreements set forth specific rent amounts to be paid during the twenty-year rental period,[11] and it obligated KFC to pay taxes on the properties[12] as well as repair or replace the buildings, under certain circumstances, if they were destroyed.[13] On August 29, 2005, Hurricane Katrina struck the New Orleans area,

---

[6]KFC U.S. Properties, Inc. is the successor to KFC National Management Company.  Rec. Doc. No. 23-2, p. 1.

[7]Rec. Doc Nos. 23-3, 23-4.

[8]Rec. Doc. Nos. 23-6, 23-7.

[9]Rec. Doc. No. 23-3, p. 11; Rec. Doc. No. 23-4, p. 11.

[10]Rec. Doc. No. 23-5.

[11]Rec. Doc. No. 23-3, p. 25; Rec. Doc. No. 23-4, p. 25.

[12]Rec. Doc. No. 23-3, p. 7; Rec. Doc. No. 23-4, p. 7.

[13]Rec. Doc. No. 23-3, pp. 7-8; Rec. Doc. No. 23-4, pp. 7-8.

causing damage to the buildings on the two leased properties.[14] Neither KFC nor West has made rental payments pursuant to the lease agreements following Hurricane Katrina, nor have the buildings been repaired.[15]

*Law and Analysis*

**I. Rule 56 Standard**

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories . . . [and] affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.; Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden

---

[14]Rec. Doc. No. 19-3, p. 3 ¶12; Rec. Doc. No. 23-2, p. 2. ¶12.

[15]Rec. Doc. No. 19-3, p. 3 ¶13.  West asserts that it has continued to pay real estate taxes and maintain insurance on the property pursuant to the lease agreements.  Rec. Doc. No. 39, p. 3.

pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

**II. Analysis**

The dispute in this case centers on the enforceability of the land lease agreements in the wake of the destruction caused by Hurricane Katrina. KFC raises three principal arguments that the

lease agreements must be dissolved because of the hurricane's effects.

**A. Article 2715**

KFC first relies on Louisiana Civil Code Article 2715, which provides, in pertinent part, that where the thing leased is "partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired," and the impairment "was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease."[16]  KFC argues that, as of August 29, 2005, the leased properties were "substantially impaired such that the properties were no longer fit for the express intended use of operating a Kentucky Fried Chicken restaurant."[17] Accordingly, KFC asserts that it is entitled to dissolution of the leases under Article 2715.  Schwegmann counters that the lease provisions address the present situation and, therefore, under

---

[16]La. Civ. Code art. 2715.  Article 2715 provides in full:

> If, without the fault of the lessee, the thing is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.
>
> If the impairment of the use of the leased thing was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease, but is not entitled to diminution of the rent.

*Id.*   The Article, which became effective January 1, 2005, is derived in part from Articles 2697 and 2699 of the Civil Code of 1870.  *Id.* at revision comments.

[17]Rec. Doc. No. 23, pp. 6-7.

Louisiana law, control the obligations of the parties, making the codal articles inapplicable.

Under Louisiana law, a lease is a "synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay."[18] La. Civ. Code art. 2668. In a lease contract, the rules of the Civil Code "become applicable for *filling any gaps* in the parties' agreement and for determining its overall validity and effectiveness." La. Civ. Code art. 2668 cmt. (e)(emphasis added). As the Louisiana Supreme Court has held,

> [T]he codal articles and statutes defining the rights and obli[g]ations of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. ... Our jurisprudence is that the usual warranties and obligations imposed

---

[18]The Fifth Circuit has stated the controlling principles for contract interpretation under Louisiana law:

(1) Every provision of the contract must be interpreted in light of the contract's other provisions in order to give each provision the meaning suggested by the contract as a whole; (2) Contract provisions susceptible to different meanings should be interpreted so as not to neutralize or ignore any provision or treat any provision as mere surplusage and so as to preserve the validity of the contract; and (3) "'A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.'" Only if these rules do not resolve the issue of how to interpret the contractual provision at issue should the provision be interpreted against the party that drafted it, which default rule applies, in any event, "only ... when there are two equally reasonable interpretations of the contractual provision in question."

*In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 443 (5th Cir. 2002).

-7-

> under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good.

*Tassin v. Slidell Mini-Storage, Inc.*, 396 So. 2d 1261, 1264 (La. 1981) (internal citations omitted).

The Comments to Article 2714—the companion provision to Article 2715—also provide some guidance on the role of Article 2715 as a gap-filler provision. While Article 2715 deals with situations of partial destruction and substantial impairment, Article 2714 addresses situations where the object of the lease is totally destroyed. Where such total destruction occurs, Article 2714 provides for the automatic termination of the lease. La. Civ. Code Art. 2714. However, the Comments to the Article provide, "parties may prevent such termination by inserting appropriate clauses in the lease contract." La. Civ. Code art. 2714 cmt. (e). The Comment cites to *Cerniglia v. Napoli*, 517 So. 2d 1209 (La. Ct. App. 4th Cir. 1987).

In *Cerniglia*, the leased premises were destroyed by fire but the lease contained a fire clause providing for reconstruction and continuation of the lease under certain circumstances. The Court held that the lessee could not rely on Article 2697, the predecessor to Article 2714, finding that the codal article's provision for lease termination in the event of total destruction of the leased thing "is applicable only where there is no lease

agreement to the contrary." *Id.* at 1211 (citing *Paul v. Adams*, 338 So. 2d 968 (La. Ct. App. 4th Cir. 1976)).

While the Civil Code has no similar comment for Article 2715, the underlying principle that the codal article's protection may be waived is equally applicable to cases of partial destruction covered by Article 2715 as it is for cases of total destruction under Article 2714. Since Louisiana law permits the parties to contractually agree to continue a lease despite total destruction of the leased thing, it would be illogical for the law to preclude the parties from doing the same in the case of partial destruction or substantial impairment. The general role of the Civil Code as a gap-filler to lease contracts, as described in Comment (e) to Article 2668 and the Louisiana Supreme Court's holding in *Tassin*, supports this conclusion. Therefore, this Court finds that, if the lease agreements address the damage caused by Hurricane Katrina, then the lease provisions, not Article 2715, apply.[19]

The lease agreements contain a "destruction of premises" provision which provides, "If the building upon the demised premises be damaged or rendered untenantable by fire or other

---

[19]As in *Cerniglia*, the rights of others would not be affected by this deviation from the default provisions of the Code, and such an outcome would not be contrary to the public good; by agreeing to continue the lease contract despite partial destruction or substantial impairment, the parties would neither have waived a term essential to the contract nor agreed to a term "expressly or impliedly prohibited by law." *Louisiana Nat. Leasing Corp. v. ADF Service, Inc.*, 377 So. 2d 92, 95 (La. 1979).

casualty ... Tenant shall ... repair or replace said building."[20] While the agreements do not define "other casualty," this Court finds that the effects of a storm, including Hurricane Katrina, are within the prevailing meaning of that phrase.[21] Accordingly, the lease provision, not Article 2715, applies.[22]

The "destruction of premises" lease provision specifically provides, "In the case of damage or destruction in the last three

---

[20]Rec. Doc. No. 23-3, pp. 7-8; Rec. Doc. No. 23-4, pp. 7-8.

[21]Under the Louisiana Civil Code, the words of a contract must be given their generally prevailing meaning. La. Civ. Code art. 2047. While the parties do not define "other casualty" in their agreement, the Court finds that the prevailing meaning of that term unambiguously includes storms and hurricanes. "Casualty" is defined as a "serious or fatal accident." Black's Law Dictionary 209 (7th ed. 1999). "Accident" is defined as an "unforseen and injurious occurrence not attributable to mistake, neglect, or misconduct." *Id.* at 15. The widespread devastation caused by Hurricane Katrina falls within these terms. The Court notes that neither party has cited caselaw interpreting the phrase "other casualty," and the Court's own review has produced only one relevant result, which supports the conclusion reached here. The phrase "other casualty" appears in the Internal Revenue Code, which provides for deductions where losses arise from "fire, storm, shipwreck, or other casualty." *See* 26 U.S.C. § 165(c)(3). In that context, courts have held that "other casualty" refers to incidents of a similar character to fires, storms, and shipwrecks, all of which are disasters. *See Formel v. Commissioner*, 9 T.C.M. (CCH) 782 (T.C. 1950).
   Finding the prevailing meaning to be unambiguous, there is no disputed issue of material fact and the Court need not consider parol evidence on the parties' intent. See, e.g., *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods.*, 448 F.3d 760, 778 (5th Cir. 2006) ("Having determined that the policy language is unambiguous, we need not reach beyond the four corners of the document to explore the intent of the parties.").

[22]The cases cited by KFC and West are distinguishable. In *Viterbo v. Friedlander*, 120 U.S. 707, 7 S. Ct. 962, 30 L. Ed. 776 (1887), there is no indication that the lease agreement provided for the obligations of the parties in the event of a casualty such as flooding. Therefore, unlike the present case, the parties relied exclusively on the Civil Code to determine the legal status of their lease agreement. Moreover, the lease was not simply of land, but of a sugar plantation leased for growing crops. *Id.* at 733, 7 S. Ct. at 976. The land itself was flooded for three months. *Id.* at 735, 7 S. Ct. at 977. As KFC itself admits, *Viterbo* also was decided well over 100 years before the enactment of the current Article 2715 in 2004. *Chargeois v. Fiero*, 129 So. 229 (La. Ct. App. 1st Cir. 1930), is also distinguishable because there was no provision in that lease providing for a casualty such as flooding. Like *Viterbo,* the property in question also was flooded for approximately three months. *Id.* at 229.

(3) years of this lease ... Tenant may ... elect to terminate this lease as of the date of said damage."[23]  This provision reflects that the parties did consider circumstances in which damage to the properties could make continuation of the lease no longer viable, and contractually agreed that termination of the lease in such a situation would only be permitted where the damage occurred within the last three years of the lease.  The damage here occurred prior to that three-year mark and, therefore, KFC and West remain obligated under the lease pursuant to the express terms of those agreements.

**B. Article 2696**

KFC and West also argue that they are entitled to dissolution of the lease agreements pursuant to Civil Code Article 2696.[24] Companion Article 2699 specifically provides that the warranty in Article 2696 may only be waived by "clear and unambiguous language that is brought to the attention of the lessee."  La. Civ. Code art. 2699.

Assuming, *arguendo*, that these stringent waiver requirements

---

[23]Rec. Doc. No. 23-3, p. 8; Rec. Doc. No. 23-4, p. 8.

[24]Article 2696 provides:

> The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.
>
> This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.

-11-

have not been met, the Court finds that there is no violation of Article 2696 as the "thing" leased, the land, is suitable to operate a retail business[25] and free of vices or defects that would prevent its use for that purpose.

In *West v. Brown*, 131 So. 2d 306 (La. Ct. App. 2d Cir. 1961), the defendants leased a vacant lot on which they constructed a retail business, which was later destroyed by fire. *Id.* at 307. Relying on former Articles 2697 and 2699, the defendants asserted that the lease was terminated because the building was destroyed and became unfit for the purpose for which it was leased. Rejecting this argument, the Court held that "the defendants now have what they leased–a vacant lot" and, therefore, the Civil Code Articles relied upon were inapplicable. *Id.* at 307-08.

As in *West*, the lease agreements here provided for the lease of vacant lots on which the tenant constructed buildings.[26] The only factual submission before the Court as to these properties being unfit consists of an affidavit by Richard West, President of West. In that affidavit, Mr. West essentially asserts that the

---

[25]The lease agreements provide that the property may be used for any lawful retail business with certain specified conditions. Rec. Doc. No. 23-3, p. 10; Rec. Doc. No. 23-4, p. 10.

[26]Under the terms of the agreements, Schwegmann was to remove any existing buildings on the premises, leaving the tenant with only surface paving and underground improvements to the land. Rec. Doc. No. 23-3, p. 9; Rec. Doc. No. 23-4, p. 9. The tenant's improvements will become Schwegmann's property or be destroyed at the tenant's expense, as Schwegmann elects, upon termination of the lease. Rec. Doc. No. 23-3, p. 5; Rec. Doc. No. 23-4, p. 5. However, as in *West*, "at the time of the [hurricane] ... the building belonged solely to the assignee of the lessees." *West*, 131 So. 2d at 308.

properties are unfit for their intended use because of changed economic and demographic conditions in the surrounding neighborhood.[27] However, as it asserts, Schwegmann did not guarantee the success of the business under the lease agreements, and changed economic and demographic conditions do not make the leased land, itself, unsuitable for a retail business. It is a fundamental tenet of contract law that "when we make bargains that turn out to be good for us that we keep them and then when we make bargains that turn out to be bad for us that we also keep them." *Bolin Farms v. Am. Cotton Shippers Ass'n*, 370 F. Supp. 1353, 1359 (W.D. La. 1974) (internal citation committed).

Likewise, there is no evidence of a vice or defect on the properties under Louisiana law. The Louisiana Civil Code does not define "vice or defect," but the phrase refers to some shortcoming in the property that makes it less suitable than normal property. *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1160 (5th Cir. 1983). Louisiana courts, however, have held that not every defect in leased premises will serve as the basis for a claim of damages. "Instead, '[t]he vices and defects contemplated in La. Civ. Code art. 2695 must be substantial and of such nature as are likely to cause injury to a reasonably prudent individual.'" *Id.* (quoting *Morgan v. Am. Indem. Co.*, 180 So. 2d 429, 433 (La. Ct. App. 1st Cir. 1965)).

---

[27]Rec. Doc. No. 39-2, p. 2.

The Fifth Circuit in *Volkswagen* held that the lack of any drainage on the property during an impending hurricane was a "vice or defect" under Article 2695. *Id.* at 1161. However, that holding was premised on the unique status of the property in question, which was located at the toe of the levee and situated on top of a filled-in pond. The landlord knew that the Levee Board, in the event of a hurricane, would shut the gates providing the only drainage for the property. *Id.* at 1160. The property in *Volkswagen* was, therefore, uniquely prone to flooding given its position in relation to the levee and pond, as well as the Levee Board plans of which the landlord was aware. By contrast, there is no evidence in this case that the Schwegmann properties are uniquely prone to flooding or that they contain any other vice or defect.[28] Therefore, KFC and West are not entitled to relief pursuant to Article 2696.

## C. Article 2682

Finally, KFC argues that it is entitled to dissolution of the lease agreements pursuant to Article 2696, which states that the lessor is bound "to maintain the thing in a condition suitable for the purpose of which it was leased" and "to protect the lessee's peaceful possession for the duration of the lease." La. Civ. Code art. 2682. The first prong, regarding suitable condition, refers

---

[28]Indeed, although KFC and West assert the applicability of Article 2696, they provide no evidence or argument as to any specific alleged vice or defect.

to the lessor's duty to make repairs on the property, unless such duty is expressly assigned to the lessee by law or contract. La. Civ. Code art. 2691 & cmt. (b); 2 La. Prac. Real Est. § 18:22 (2d ed.).  The only repairs that could be in question are those necessitated by Hurricane Katrina, and the lease agreements expressly assign the repair of that damage to the tenant.[29]

Instead, KFC's argument seems to focus on the second prong, in relation to which KFC argues, "[A]s a result of Hurricane Katrina, the lessee lost its peaceable possession of the leased properties."[30] KFC relies on *Entergy Louisiana, Inc. v. Kennedy*, which states that the lessee's right to peaceable possession is a matter of public policy that cannot be waived.  859 So.2d 74, 80 (La. Ct. App. 1st Cir. 2003).  "Therefore, should the lessor fail to provide the lessee with peaceable possession, the lessee's obligation to pay rent ceases, and no 'hell or high water' clause can be relied upon to resurrect that obligation." *Id.*

However, as Schwegmann asserts, this provision is inapplicable in this case because the lessee has peaceable possession of the properties.  Article 2700 expressly defines the warranty of peaceable possession:  "The lessor warrants the lessee's peaceful possession of the leased thing against any disturbance *caused by a person* who asserts ownership, or right to possession of, or any

---

[29]Rec. Doc. No. 23-3, pp. 7-8; Rec. Doc. No. 23-4, pp. 7-8.

[30]Rec. Doc. No. 33-2, p. 8.

other right in the thing."  La. Civ. Code. Art. 2700 (emphasis added).  There is no allegation that a person has disturbed the tenant's lawful possession of the property; rather, KFC asserts that the "unforseen circumstances created by Hurricane Katrina and its aftermath resulted ... [in a breach of the duty of] peaceable possession."  The Civil Code simply does not support such an interpretation of the warranty of peaceable possession, which would render a landlord liable whenever an act of nature disturbs the object of the lease.[31]  Therefore, there is no basis for dissolution of the lease agreements.

**D. KFC's Motion for Summary Judgment Against West**

The only remaining issue before the Court is KFC's motion for summary judgment on its cross-claim and third-party claim against West.  West has not opposed the motion.  On May 13, 1999, KFC National Management Company assigned the two land leases to West.[32]  Under the terms of those assignments, West, as assignee, expressly assumed all obligations of KFC, as assignor and tenant, under the

---

[31]The Court notes that the Civil Code also specifically provides that a lessor is not liable for any disturbance to the lessee's possession caused by a person who does not claim a right in the leased thing.  La. Civ. Code Art. 2702. KFC makes general assertions, not supported by evidence in the record, that the properties were "completely inaccessible for weeks or even months by order of the civil authorities and because of the levee breaches, flooding, and resultant hazardous conditions."  Rec. Doc. No. 40-3, p. 2.  To the extent that KFC asserts that the civil authorities disturbed their peaceful possession, Article 2702 directs that recourse rests with those third parties, not the landlord.  La. Civ. Code Art. 2702.

[32]Rec. Doc. Nos. 23-6; 23-7.

-16-

leases.[33]  Given this express assumption by contract, and West's lack of opposition, the Court finds that West is fully liable to KFC for its obligations as tenant and guarantor under the terms of the lease agreements.  However, the Court notes Schwegmann's requisite consent to the assignments expressly required that KFC remain liable for any and all obligations under the lease agreements.  Under Louisiana law, KFC and West are solidarily liable for the tenant's obligations under the lease agreements. La. Civ. Code art. 1821 & cmt. (c).  Therefore, Schwegmann is entitled to seek damages[34] and compliance with the lease agreements from KFC and West, and KFC is entitled to indemnification from West for its full liability to Schwegmann under the lease agreements.

For the above and foregoing reasons,

**IT IS ORDERED** that Schwegmann Family Trust No. 2's motion[35] for summary judgment against KFC U.S. Properties, Inc., KFC Corporation, and West Quality Food Service, Inc. is **GRANTED,** and that KFC and West are liable for rent, repairs, and applicable damages, including reasonable attorney's fees, costs, and expenses,

---

[33]Additionally, while not attached to the record in this case for reasons of confidentiality, the Asset Purchase Agreement between West and KFC also provided that West assumes all obligations under the leases and shall indemnify KFC "from any and all loss, cost, damage or expense ... (including court costs and reasonable attorneys' fees and expenses) resulting from or arising out of: ... The Assumed Liabilities."  Rec. Doc. No. 29-2, pp. 4-5.

[34]The Court notes that these damages include reasonable attorney's fees, costs, and expenses incurred in connection with this litigation, pursuant to the attorney's fees provision in the lease agreements.  Rec. Doc. No. 23-3, p. 20 ¶22; Rec. Doc. No. 23-4, p. 20 ¶22.

[35]Rec. Doc. No. 19.

under the terms of the lease agreements.

**IT IS FURTHER ORDERED** that KFC's motion[36] for summary judgment against West is **GRANTED,** and that KFC is entitled to indemnification from West for its full liability to Schwegmann under the lease agreements.

**IT IS FURTHER ORDERED** that KFC's motion[37] for summary judgment against Schwegmann is **DENIED.**

New Orleans, Louisiana, January __5th__, 2007.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[36]Rec. Doc. No. 29.

[37]Rec. Doc. No. 33.